ALBANY,
August, 1806.

Carew
v.
Otis.

Judgment of nonsuit.

Carew *against* Otis.

C and D claim-ed money in the hands of O. C brought his suit against O, who defended the suit at the re-quest of D. The attorney of C entered into a compromise with the attor-ney of D and O, and the suit was discontinued ; after which O paid over the money in his hands to D. C

THIS was an action of *assumpsit.* The cause was tried at the *New-York sittings,* in *April,* 1805, before Mr. Jus-tice *Thompson.*

In the year 1801, the plaintiff in this suit, who resides at *Norwich* in the state of *Connecticut,* commenced an ac-tion in this court for money had and received to his use. The money claimed in that action by the plaintiff, arose out of the sale of a ship belonging to one *Kelly,* of *Nor-wich,* and mortgaged by him to the plaintiff, and afterwards mortgaged to *Dewitt* and others in *Connecticut. Dewitt* and others, also claimed the money in the hands of the defen-afterwards finding a defect in the securities delivered to him, as part of the conditions of the compromise, brought his action against O for a breach of his promise, that the securities were valid. It was held, that O was a mere stakeholder, and the agreement about the compromise must be considered as made between C and D, and that having paid over the money to his principal, O was no longer liable.

dant, and the suit brought by the plaintiff was defended by their request and for their benefit. This fact was known to the plaintiff. When that cause was called on to trial, in *March*, 1802, and the jury were sworn, the parties entered into the following compromise: The plaintiff agreed to receive for the amount of his claim, a part in cash, and for the residue, the two promissory notes mentioned in the declaration in this suit, which notes had been previously passed away by him to *Kelly*, and formed a part of the sum for which the mortgage was given to the plaintiff, and were then to be returned to him. The plaintiff was also to be paid the costs of suit, and be reimbursed the counsel fees he had advanced. The notes were thereupon delivered to the plaintiff, who on examining them, objected that they appeared to have been altered. Upon which a *Mr. Lanman*, who attended the trial as the agent of *Dewitt* and others, replied, that the notes were in the same condition as when the plaintiff parted with them, and that nothing had been done to invalidate them ; and the attorney for the defendant observed, that it was to be so understood. The plaintiff then accepted the notes, and the jury were discharged. The other terms of the compromise were afterwards fulfilled by the defendant. The notes in question had never been in the hands of the defendant, but were brought to *New-York* by *Lanman*, the *agent* of *Dewitt* and others. At the time of the compromise, the makers of the notes were understood to be in embarrassed circumstances and the notes of little value. The defendant had no interest in the money for which he was sued by the plaintiff; but held it subject to the contending claims ; and this was known to the plaintiff. The settlement was made with the plaintiff by the attorney of the defendant and *Lanman*, without consulting the defendant about the terms of it. The defendant, afterwards paid over to the other claimants in *Norwich*, the balance of money remaining in his hands. After this settlement, the plaintiff gave notice to the defendant, that the notes had been altered and paid, and demanded the payment of them. The defendant, with the consent of *Dewitt* and

Carew
v.
Otis.

others, then offered to rescind the agreement for the com-
promise, and to place the plaintiff in the same situation in
the original suit, as he was when the compromise was
made. This offer, made before the commencement of the
present suit, was refused by the plaintiff. The notes had
been altered while in the hands of *Kelly* ;* and the only
evidence of any payment was, that *Kelly* had charged them
against the makers, in his account with them ; but there re-
mained due to *Kelly*, from the makers, on that account, a
balance greater than the amount of the notes. One of the
makers resided at *Demerara*, and was reputed to be in sol-
vent circumstances.

On the evidence of the above facts, a verdict was found
for the plaintiff for five hundred dollars, with liberty to
move the court for a new trial on a case made.

*Boyd*, for the defendant. 1. The defendant in this case act-
ed as the *agent* of *Dewitt* and others, between whom and the
plaintiff the agreement must be considered as virtually
made. The money having been paid over by the defen-
dant to his principals, before any notice of the plaintiff's
claim on account of the notes, he was completely exonerated.
Having acted with perfect good faith, in regard to the agree-
ment, he cannot, after having paid over the money to the
persons entitled to receive it, be made liable to the plaintiff,
though there may have been a mistake about the notes.     In

---

* The notes were in the following words ; the alterations made in red
ink, are here printed in *italics*.

I.

$ 1000.                         Norwich, February, 17, 1798.
For value received we promise, jointly and severally, to pay unto
Joseph Carew, the sum of one thousand dollars on demand, with inter-
est from the 27th day of July until paid. Witness our hands.
                                        KELLY & BENJAMIN,
                        *As Sureties.* {HUGH KELLY,
                                       {ELIAS LORD.

II.

*We Kelly & Benjamin as principals, and H. Kelly & E. Lord as surety.*
In thirty-four days from date, we the subscribers, jointly and severally
promise to pay to Joseph Carew or order, four hundred and thirty-four
dollars; interest after due. Witness our hands, &c.

the case of *Buller* v. *Harrison*,* the question was, whether the placing the money received by the *agent* to the account of his *principal*, was *paying it over?* It is clear from the whole case, that had the money been paid over in fact, no action would have lain against the agent. Indeed, Lord *Mansfield* observes, that if an agent pay over money, which has been paid by mistake, he does no wrong, and the plaintiff must call on the principal.

ALBANY,
August, 1806.

Carew
v.
Otis.

* *Cowper*, 566.

2. The alterations or additions to the notes, were not such as to invalidate them. In regard to the first note, the alteration was such as any holder was authorised to make. In the second note the words added, made the parties *sureties.* This alteration does not affect the rights of the holder of the note. Being made by the parties themselves, they never would be allowed to object to the payment on that ground; for this would be permitting them to take advantage of their own wrong. 3. But it is said, that the notes had been paid. That was not the case, unless the delivery of them to one of the makers was to be deemed a payment; the charging them in the books of account of *H. Kelly*, cannot amount to a payment, nor extinguish them, so as to prevent the *payee* from maintaining an action upon them, whenever they come again into his possession. As to the delivery of the notes by *Carew* to *Kelly*, that was a fact which the plaintiff must have known at the time of the agreement, and against the effects of which, it cannot be supposed, that the defendant intended to stipulate; nor ought the plaintiff to be allowed to avail himself of that circumstance, as the ground of the extinguishment of the notes.

*T. L. Ogden*, for the plaintiff. 1. The defendant was in fact a debtor to the plaintiff, for money had and received to his use; at least, he was a *stake-holder* liable to the contending parties. This liability was a sufficient consideration for the agreement, and made it binding upon the defendant. The agreement was made by the attorney of the defendant; and was confirmed and ratified, by his paying the money and costs to the plaintiff in pursuance of the agreement. That he afterwards paid over the balance in his hands, does not

ALBANY,
August, 1806.

Carew
v.
Otis.

vary the case; if he thought proper to enter into this engagement with the plaintiff, the subsequent payment of money held by him, cannot release him from his responsibility on an express promise. Having a full knowledge of the plaintiff's claim, he has parted with the money in his own wrong. 2. Can a note, after being altered or defaced, be again negotiated so as to give the holder a right of action upon such note? The alterations are material, for they change the characters of the parties, making some liable merely as sureties. A note, after it has once been issued, and returned again to the maker, cannot be altered, and again issued as a valid note. 3. These notes, after they came into the hands of *Kelly*, were charged in account, and the items merged in a general balance. After charging them in account, and making memorandums and alterations on them, they must be considered as settled; and it was a fraud, after this concurrent adjustment of the parties, to put the notes again into circulation. 4. The notes having been thus invalidated, there is a breach of the promise and undertaking of the defendant, for which he ought to be made liable to the plaintiff. The only question is, whether the notes were invalidated? for that is the ground of the action; if they were, the plaintiff must have judgment.

*Harison,* in reply. The promise or agreement of the defendant was, that the notes should remain valid evidence of a debt or account. If the power of recovering on the notes has been defeated, it was by the act of the plaintiff himself, the result of prior transactions between the parties, of which the defendant was perfectly ignorant. But there is nothing on the face of the notes, and the transactions relating to them, that shows them to be invalidated. It was not intended by the parties to stipulate as to any immaterial alteration that could not vitiate the notes. That they have been in the hands of *Kelly* does not affect their validity. The inserting the words *sureties,* does not change their essence, or impair the notes. All the makers remain equally responsible to the holder as principals; the insertion of the words in red ink, was merely to denote the situation of

their rights between themselves, but could not vary or impair the rights or remedies of a holder. The fact that *Kelly* had charged the note in account with the makers, does not amount to a payment; he might apply the items of his own account as he pleased; besides, the balance was still in their favour.

But the defendant was a mere stake-holder. The compromise was made by the real parties in controversy; and the defendant paid over the money, pursuant to their directions. He had no interest in the money; it would be extremely hard that an agent or stake-holder should be made liable when he has parted with the money, in consequence of an arrangement between the contending parties. The offer to rescind the whole agreement, and put the plaintiff in the situation in which he originally stood, ought to have some weight in favour of the defendant. The presence of the attorney of the defendant, or his conversation ought not to bind the defendant, for he was, in fact, the counsellor of *Lanman,* who was the agent of *Dewitt and others,* the real party in the controversy.

THOMPSON, J. delivered the opinion of the court. The facts stated in this case are not sufficient to sustain the present action. The defendant was a mere stake-holder of the money, which was the subject of the former suit. The plaintiff who had an interest in the money, settled the dispute with respect to its disposition; this was done without the agency or interference of the defendant; and on such compromise he paid over the money, according to the terms of the settlement, which must be considered as done pursuant to the direction and orders of the parties interested in it, and as equivalent to a payment to themselves. The defendant having had no agency in the compromise, it is perfectly immaterial, as it respects his liability, whether or not the plaintiff was deceived or defrauded in that settlement. No notice was given to the defendant of the pretended alteration of the notes, until after he had paid over the money, and it would be unjust in the extreme, to make him responsible for the negligence of the plaintiff, or the misrepresentations of *Lanman,* with whom

ALBANY,
August, 1806.

he made the settlement. If *Lanman* could be considered the agent of the defendant, the subsequent conduct of the latter, in paying over the money pursuant to the compromise, might be deemed a ratification, and make him responsible for the fulfilment of the contract; but every part of the case excludes the idea of the defendant's having had any interest in the controversy. He was not only, in fact, a mere nominal party, but this was known to, and well understood by the plaintiff. The case states explicitly, that the first suit, which was the subject of the settlement, was defended at the instance and for the benefit of *Dewitt* and others, and that this was known to the plaintiff. *Lanman* acted as the known and avowed agent of *Dewitt* and others. The plaintiff contracted with him in that capacity; and if the contract has not been complied with, a remedy must be sought either against the principals or their agents, and not against one who had no concern in the transaction. This objection, without examining any of the other points, goes to the whole merit of the plaintiff's claim, and would entitle the defendant to judgment, but according to the terms of the case, we can only set aside the verdict and award a new trial.

New trial granted.